IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON COLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-00611-MDH |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of his application for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. Plaintiff exhausted his administrative remedies and the matter is ripe for judicial review. The Court has carefully reviewed the briefs and record and finds the ALJ erred by granting "little weight" to the opinions of Plaintiff's treating physicians. Accordingly, the Court **REVERSES** and **REMANDS** the decision to the Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, this case involves a 50-year old man who applied for SSDI benefits due to alleged impairments including depression, back problems, herniated disc, sciatic nerve problems, neck problems, heart problems, left knee and foot problems, and blood clots in his lungs and legs. Plaintiff's alleged onset date was September 1, 2010 and his date last insured was December 31, 2010. The ALJ concluded that Plaintiff was not disabled during the relevant time period after he found Plaintiff suffered from

1

severe impairments including back disorder and history of deep vein thrombosis but concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with certain limitations and, therefore, could perform work that exists in significant numbers in the national economy.

Plaintiff now appeals the final decision of the Commissioner arguing the ALJ failed to apply appropriate legal standards in assessing RFC because: (1) the RFC is not supported by competent medical evidence, (2) the ALJ failed to fully develop the record by failing to "obtain information from a medical professional with regard to Mr. Colin's RFC, considering all his impairments, confirmed by the medical records" and (3) the ALJ failed to properly consider the opinions of Plaintiff's treating physicians. Plaintiff argues the ALJ erred at step five because the hypothetical posed to the VE did not include any of the functional limitations identified by Plaintiff's treating doctors.

## II. STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). The standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two inconsistent

positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## III.  DISCUSSION

Upon review, the Court finds the ALJ improperly weighed the medical opinions of record.  Reversal and remand is necessary in order to formulate an appropriate RFC in light of the treating physician's opinions, to order any additional medical opinions or re-contact the treating physicians if deemed necessary, and to reassess whether Plaintiff was able to perform jobs that existed in significant numbers in the national economy based upon the new RFC.

### A.  Standards in Assessing RFC

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).  Because RFC is a medical question, it "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).  While the ALJ must consider at least some supporting evidence from a medical professional in assessing a claimant's workplace limitations, *see Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

3

capacity in question"). This is because RFC is ultimately an administrative determination reserved to the Commissioner based on all of the relevant medical and other evidence. *Cox*, 495 F.3d at 619; *see* 20 C.F.R. § 404.1545.

### B. ALJ's RFC Assessment

From September 1, 2010 to December 31, 2010, the ALJ found Plaintiff retained the following residual functional capacity:

> [T]he claimant had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b), including the ability to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk for up to 6 hours in an 8 hour work day, and sit for up to 6 hours in an 8 hour work day with normal breaks. He can never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, balance, and bend.

Tr. 23. In arriving at Plaintiff's RFC, the ALJ found Plaintiff's medically determinable physical and mental impairments could reasonably be expected to produce Plaintiff's pain or other alleged symptoms but that Plaintiff's and his friend's statements regarding the intensity, persistence, and limiting effects of those impairments were not fully credible. The ALJ found the medical opinions of Plaintiff's two treating physicians were also entitled to "little weight."

The ALJ found Plaintiff and his friend not credible based on Plaintiff's poor work history suggesting low motivation to work, Plaintiff's lack of follow up medical treatment for his back pain, his refusal to undergo surgery to alleviate his neck pain, x-rays that showed only multilevel degenerative disc disease at Plaintiff's cervical spine with no acute or significant problems, Plaintiff's lack of treatment for neck/back pain around the alleged time of onset, the fact that Plaintiff was not prescribed strong pain medication, Plaintiff's failure to report the alleged negative side effects of his medication to his physicians, the fact that the medical records for the relevant time period show Plaintiff had only a history of DVT, Plaintiff's non-compliance with

4

medical treatment for his DVT, and his finding that Plaintiff's reported daily activities suggest Plaintiff is more physically capable than alleged.

The ALJ gave "little weight" to the only two medical opinions in the record, which were completed by Plaintiff's treating physicians in 2008 and 2012. The ALJ discounted the opinions because "they were given during a time that is outside of the time period in question" and "their opinions are simply not supported by the claimant's treatment notes, his lack of treatment, his non-narcotic pain medications and his daily living activities." The ALJ also found the opinion of Dr. Salzman "internally inconsistent" because: (1) he found Plaintiff must lie down throughout the day due to DVT but can frequently use foot pedals, and (2) he found Plaintiff can never perform postural activities but can sit down/stand up and can occasionally reach and push/pull.

### C. ALJ Erred in Assessing RFC

In determining whether a claimant is disabled, the ALJ considers the medical opinions in the case together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b). The weight to give to a particular medical opinion is determined by various factors such as the examining relationship, the nature and length of the treatment relationship, the support provided for the opinion, consistency, and specialization. *Id.* at § 404.1527(c). The Eighth Circuit recently described the appropriate weight to afford to opinions of treating physicians:

> The ALJ must give "controlling weight" to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir.2007) (internal quotation marks and emphases omitted). *See* S.S.R. 96–2p, Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) ("Not inconsistent ... is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.").

5

> "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir.2007). It may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). The ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."

*Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).

Here, the ALJ improperly afforded the opinions of Plaintiff's treating physicians – Dr. Dietz and Dr. Salzman – "little weight." Although their opinions were rendered in 2008 and 2012, which is outside the relevant time period from September to December of 2010, the opinions should not have been ignored completely. *See generally Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). This is especially true where, as here, the opinions are from treating physicians and constitute the only direct evidence from a medical professional in assessing Plaintiff's workplace limitations. The Court further notes that Dr. Salzman, who provided his opinion in 2012, treated Plaintiff both before and after the relevant time period (i.e. March 2008, August 2009, March 2010, and November 2012). Even assuming the physicians' opinions were not entitled to "controlling weight," they should have been afforded substantial weight.[1]

---

[1] The below chart, in addition to the ALJ's stated weight, indicates the opinions were not given substantial weight:

|  | **Dr. Dietz** | **Dr. Salzman** | **ALJ** |
|---|---|---|---|
| Impairments | Back pain | Back pain, DVT | Back pain, DVT |
| Lift/Carry | 0-5 lbs. occasionally | Lift 10 lbs. occasionally / never carry | 20 lbs. occasionally and 10 pounds frequently |
| Stand/Walk | 0-1/0-1 hrs | 1/<1 hrs | 6 hrs |
| Sit | 3 hrs | 2 hrs | 6 hrs |
| Breaks | Hourly (5 min.) | 30 min. (5 min.) | Normal breaks |
| Climb ladders/ropes/ scaffolds | (unaddressed) | Never | Never |
| Climb ramps or stairs | (unaddressed) | Never | Occasionally |
| Stoop, kneel, crouch, crawl, balance, bend | Never | Never | Occasionally |
| Foot pedals | (unaddressed) | Frequently | (no limitation) |
| Reaching/ pulling and pushing | "Marked" limitations | Occasionally | (no limitation) |
| Handling/feeling | "Marked" limitations | Frequently | (no limitation) |

6

Contrary to the ALJ's finding, the treating physicians' opinions were not inconsistent with the record as a whole.  Plaintiff's medical records show that Plaintiff sought treatment for back pain and DVT consistently before his alleged onset date, that those impairments were confirmed through objective medical tests, that he was prescribed medication for the pain associated with those impairments, and that those impairments were present during the relevant time period.[2]  Although Plaintiff was admittedly non-compliant with his DVT medication at times prior to the alleged onset date, he testified that he failed to take the prescribed medication because he could not afford it due to lack of insurance.[3]  Moreover, Plaintiff's reported daily activities – including caring for his personal hygiene, watching TV/reading/playing cards, small tasks, walking a half block to two blocks to the store, caring for his cats, fixing meals while sitting, loading the dishwasher, and doing some laundry – are not necessarily inconsistent with the limitations cited by Plaintiffs' treating physicians, especially when one considers that Plaintiff reportedly completed these activities slowly and with breaks for resting or laying as

---

[2] *See generally Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'"). Plaintiff underwent significant back surgery in May of 2006 and consistently reported continuing back pain during his medical visits in August 2007, September 2007, October 2007, March 2008, and August 2009.  X-rays performed in August of 2007 revealed mutli-level degenerative disc disease "most severe at C4/C5" and "most pronounced at L4/L5 level with mild central canal stenosis and moderate to severe left neuroforaminal narrowing." Dr. Dietz opined in 2008 that Plaintiff's multilevel degenerative joint disease was "not likely to improve." Plaintiff's medical records for the relevant time period cite to Plaintiff's "chronic back pain."  Plaintiff has been prescribed muscle relaxers and pain pills to alleviate his back pain but he stated they only "kind of help" and he has "constant" pain in his left center back and down his left leg. Dr. Salzman stated in his 2012 opinion that "maximum treatment for back pain . . . has been completed – I expect no further improvements – unable to work due to back pain[.]"  As to Plaintiff's DVT, doppler imaging showed extensive DVT in Plaintiff's left leg at least as early as 2008.  Plaintiff sought treatment for his DVT in March 2008, July 2009, August 2009, and March 2010; although his lower extremity venous duplex test was negative for DVT in August 2010, right before the alleged onset date, Plaintiff's treatment notes for the relevant time period indicate he was continued on anticoagulation medication (Plavix) for his DVT.  Plaintiff reported that he has been medication compliant since his alleged onset date and that he still suffers severe leg pain and swelling approximately every other month.  Dr. Salzman stated in his 2012 medical opinion that Plaintiff gets "swollen legs from deep vein thrombosis – needs to lie down to relieve pain" and "maximum treatment for . . . blood clots in legs has been completed – I expect no further improvements[.]"

[3] *See generally Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("a lack of sufficient financial resources to follow prescribed treatment to remedy a disabling impairment may be ... an independent basis for finding justifiable cause for noncompliance [with prescribed treatment]").

needed.[4]  The limitations cited by the physicians are generally consistent with Plaintiff's testimony that he can sit for approximately 30 to 45 minutes at a time, stand/walk for 45 minutes to an hour at a time, can lift ten pounds occasionally, and must lay down for half the day due to pain/discomfort.  In sum, even assuming the treating physicians' opinions are not supported by all of the other evidence in the record, the Court finds "there is no other substantial evidence in the case record that contradicts or conflicts" with the opinions.  *See Papesh*, 786 F.3d at 1132.

The Court further finds the alleged internal inconsistencies in Dr. Salzman's opinion cited by the ALJ are not, in fact, inconsistencies.  The ALJ first cited Dr. Salzman's statement that Plaintiff could perform frequent use of foot pedals as inconsistent with his statement that Plaintiff suffers from DVT that causes his legs to swell such that he needs to lie down to alleviate pain.  That Plaintiff can frequently use foot pedals – i.e. 2/3 of the work day – is not inconsistent with Plaintiff's need to take breaks throughout the work day in order to lay down to reduce swelling and alleviate pain associated with his DVT.  The second alleged inconsistency cited by the ALJ is Dr. Salzman's opinion that Plaintiff can "never" perform postural activities but can "occasionally" reach and pull/push and can sit/stand.  Considering that postural limitations involve bending different parts of the body whereas the reaching/pulling/pushing limitations involve use of the upper extremities, the Court finds such restrictions are not necessarily inconsistent.  Moreover, the need to change sit/stand/lay positions in order to alleviate pain is not inconsistent with a finding that Plaintiff can never perform stooping, kneeling, crouching, crawling, balancing, and bending on a regular and continuing basis during a 40 hour work week.

Based on the foregoing, the Court finds the ALJ erred by giving both of the treating physician opinions "little weight."  While the ALJ's RFC need not mirror the limitations cited by

---

[4] *See generally* SSR 96-8P (S.S.A. July 2, 1996) ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . [a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

the treating physicians, the ALJ should have granted the opinions substantial weight in assessing Plaintiff's RFC or otherwise provided valid reasons for discounting such opinions. Neither of the treating physicians' opinions were consistent with an RFC of "light work."[5] Because the ALJ improperly weighed the only two medical opinions in the record, which were from treating physicians who are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[,]"[6] the Court remands this case to the Commissioner in order to reassess whether Plaintiff was able to perform jobs that existed in significant numbers in the national economy based upon an RFC that grants substantial weight to the findings of Plaintiff's treating physicians.

## IV.  CONCLUSION

For the reasons set forth herein, the ALJ erred in weighing the medical opinions of record and his finding that Plaintiff can perform "light" work is not supported by substantial evidence in the record as a whole.  Accordingly, the decision of the Commissioner is hereby **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Dated: September 29, 2015        */s/ Douglas Harpool*
                                 **DOUGLAS HARPOOL**
                                 **UNITED STATES DISTRICT JUDGE**

---

[5] *See* chart *supra* at n. 1.  The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  . . .

20 C.F.R. § 404.1567(b).

[6] 20 C.F.R. § 404.1527(c)(2).